WILENTZ, GOLDMAN & SPITZER P.A.
Attorneys at Law
90 Woodbridge Center Drive
Post Office Box 10
Woodbridge, New Jersey  07095
(732) 636-8000
Dominick Bratti
(DB6123)
Attorneys for Plaintiff, Suncica Reljic

UNITED STATES DISTRICT COURT
FOR DISTRICT OF NEW JERSEY

-----------------------------X
                              :
SUNCICA RELJIC                :
                              :  CIVIL ACTION NO. _____
        Plaintiff,            :
                              :
v.                            :            COMPLAINT
                              :
TULLETT PREBON AMERICAS       :
CORP., TULLETT PREBON         :
(AMERICAS) HOLDING INC.,      :
TULLETT PREBON FINANCIAL      :
SERVICES, LLC, TULLETT        :
PREBON PLC, RICHARD HIGGS,    :
AND STEPHEN DUCKWORTH         :
                              :
        Defendant.            :
                              :
-----------------------------X

     Plaintiff, Suncica Reljic, by way of Complaint against

Defendants Tullett Prebon Americas Corp., Tullett Prebon

(Americas) Holding Inc., Tullett Prebon Financial Services, LLC,

Tullett Prebon PLC, Richard Higgs, and Stephen Duckworth

(hereinafter collectively "Defendants"), states as follows:

3365044

## THE PARTIES

1.   Suncica Reljic ("Ms. Reljic" or "Plaintiff") is a citizen of Croatia.

2.   Ms. Reljic is a resident of the State of New York and resides at One Morton Square, Apartment 5E, New York, New York 10014.

3.   Tullett Prebon PLC ("Tullett") was and is a corporation organized and existing under the laws of the United Kingdom.

4.   Tullett is an intermediary in wholesale financial markets that facilitates the trading activities of its clients.

5.   Tullet owns subsidiaries, including Tullett Prebon Americas Corp., Tullett Prebon (Americas) Holding Inc., and Tullett Prebon Financial Services, LLC (collectively, including Tullett, hereinafter referred to as "Defendant Company").

6.   At all times relevant hereto, Tullett maintained control, oversight and direction over the operation of its facilities, subsidiaries and its subsidiaries' employment practices.

7.   Tullett Prebon Americas Corp. was and is a corporation organized and existing under the laws of Delaware, a State in

-2-

the United States, with its principal place of business located at 101 Hudson Street, Jersey City, New Jersey 07302 and an office located at 485 Route 1 South, Building A, Suite 230, Iselin, New Jersey 08830.

8. Tullett Prebon Americas Corp. transacts business and derives substantial revenue from its transactions in the State of New Jersey.

9. At all times relevant hereto, Tullett Prebon Americas Corp. was an employer within the meaning of all applicable statutes.

10. At all times relevant hereto, Tullett Prebon Americas Corp. maintained control, oversight and direction over its employees and its employment practices.

11. Tullett Prebon Financial Services, LLC was and is a corporation organized and existing under the laws of Delaware, a State in the United States, with its principal place of business located at 101 Hudson Street, Jersey City, New Jersey 07302 and an office located at 485 Route 1 South, Building A, Suite 230, Iselin, New Jersey 08830.

12. Tullett Prebon Finanical Services is an employer within the meaning of all applicable statutes.

13. Tullett Prebon Financial Services is an inter-dealer broker company that serves as an intermediary in wholesale

-3-

financial markets by facilitating trade activities for its clients, which clients are mostly commercial and investment banks.

14. At all times relevant hereto, Tullett Prebon Financial Services maintained control, oversight and direction over its employees and its employment practices.

15. At all times relevant hereto, Defendant Company was Ms. Reljic's employer.

16. At all times relevant hereto, Defendant Richard Higgs was the Senior Managing Director of Tullett Prebon Americas Corp.

17. Defendant Richard Higgs was Ms. Reljic's direct supervisor until in or about November, 2009.

18. At all times relevant hereto, Defendant Stephen Duckworth was the Defendant Company's Global Chief Operating Officer.

19. Defendant Stephen Duckworth became Ms. Reljic's direct supervisor in or about January, 2010.

**JURISDICTION AND VENUE**

20. This Court is vested with jurisdiction over this matter pursuant to 28 U.S.C. §1331 because Ms. Reljic's causes of action include violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000 et seq.

-4-

21. Venue is proper pursuant to ¶11 of Plaintiff's Employment Agreement with Defendant Company which provides that any suit, action or proceeding based on, arising out of or relating to Plaintiff's employment with Defendant Company "shall be brought in any federal or state court of competent jurisdiction in New Jersey, including . . . the United States District Court for the District of New Jersey and not in or before any other court, agency or other tribunal."

### STATEMENT OF FACTS

22. On or about January 7, 2002, Defendant Company hired Ms. Reljic as a Broker Trainee in Defendant Company's Jersey City, New Jersey offices.

23. In or about May, 2002, Ms. Reljic completed Defendant Company's Broker Training program and was placed on the "Euro Dollars" Desk.

24. On or about September 30, 2004, Ms. Reljic entered into an Employment Agreement with Defendant Company.

25. Ms. Reljic's Employment Agreement was amended twice, on October 18, 2005 and January 14, 2008.

26. Ms. Reljic transferred to Defendant Company's New York City offices, located at 80 Pine Street, New York, New York 10005, on or about January 7, 2008.

-5-

3365044

27.   During her tenure with Defendant Company, Ms. Reljic was frequently subjected to harassment, discrimination, retaliation and a "boy's club" atmosphere, which created a hostile work environment.

28.   During Ms. Reljic's employment, Defendant Higgs repeatedly removed his pants to expose and fondle his genitals in the view of his subordinates, including, but not limited to, Ms. Reljic.

29.   Defendant Higgs cursed at and belittled Ms. Reljic on a daily basis.

30.   Ms. Reljic was reluctant to complain about Defendant Higgs' behavior because he was her direct supervisor and a member of Defendant Company's upper level management.

31.   Defendant Higgs' behavior was tolerated and condoned by Defendant Company.

32.   Ms. Reljic was concerned that her complaints would not be taken seriously or that she might lose her job if she complained.

33.   Defendant Company controlled Ms. Reljic's U.S. Visa and Green Card applications.

34.   Ms. Reljic was also concerned about this and was afraid that if she complained, her U.S. Visa and Green Card applications would be negatively impacted.

-6-

3365044

35.   After Ms. Reljic complained, Defendant Company held up the processing of her Visa/Green Card applications.

36.   The Employment Agreement did not specifically allow Ms. Reljic to file charges/complaints of harassment/discrimination with the EEOC.

37.   Defendants did not have an acceptable method/procedure by which claims of harassment/discrimination could be addressed.

38.   Defendants did not adequately communicate to employees the procedure/method by which complaints of harassment/discrimination could/should be made by employees.

### DEFENDANTS' CONSTRUCTIVE DISCHARGE OF MS. RELJIC

39.   In or around September 2009, the working conditions at Defendant Company became so unbearable that Ms. Reljic felt she had no other alternative but to file a complaint with the Human Resources Department of Defendant Company to protect herself and other female employees.

40.   Ms. Reljic filed her complaint in or around September, 2009.

41.   Her complaint centered around the misconduct of Defendant Higgs.

42.   In September 2009, Ms. Reljic hired a new female employee, Johanna Piotrowska, as a Junior Broker.

-7-

43. A few days after Ms. Piotrowska commenced employment with Defendant Company, Defendant Higgs, Ms. Piotrowska and Ms. Reljic ate lunch together at a local restaurant, at Defendant Higgs' invitation.

44. During lunch, Defendant Higgs began drinking heavily and encouraged both women to do the same.

45. During lunch, Defendant Higgs informed the women that he did not like their "skinny bodies", but preferred women with more curves.

46. During lunch, Defendant Higgs showed the women nude pictures of his girlfriend that were stored on his I-Phone.

47. Ms. Reljic found these pictures to be offensive, embarrassing, and highly inappropriate.

48. After lunch, Ms. Reljic left the restaurant.

49. That evening Ms. Reljic learned that Defendant Higgs continued to engage in inappropriate conduct with Ms. Piotrowska.

50. A true and exact copy of the certification of Ms. Piotrowska which was submitted to the Equal Employment Opportunity Commission ("EEOC") in support of Ms. Reljic's EEOC Complaint is attached hereto as Exhibit A.

51. In or about September, 2009, Defendant Higgs asked Ms. Piotrowska to go to "his favorite wine bar."

-8-

3365044

52.  Instead of going to a wine bar, Defendant Higgs took Ms. Piotrowska to Larry Flynt's Hustler Club.

53.  The Hustler Club was operated by a publisher of pornographic magazines.

54.  Defendant Higgs told Ms. Piotrowska that the Club was his "favorite wine bar".

55.  Inside the Hustler Club, Defendant Higgs purchased coupons for women to give him "lap dances."

56.  Defendant Higgs also urged Ms. Piotrowska to purchase lap dances.

57.  Ms. Piotrowska was only at the Club that night because Defendant Higgs was her supervisor, and she did not feel comfortable leaving the Club.

58.  Ms. Piotrowska called Ms. Reljic.

59.  Ms. Piotrowska told Ms. Reljic that she was so uncomfortable she wanted to leave as Higgs behavior "was completely inappropriate."

60.  Upon receiving Ms. Piotrowska's call, Ms. Reljic advised her to leave immediately.

61.  Thereafter, Ms. Reljic spoke with Ms. Piotrowska about the incident.

62.  Ms. Piotrowska did not feel that she could file a complaint.

-9-

3365044

63. Ms. Piotrowska was afraid of what might happen to her and her job as this behavior was accepted by the most senior levels of management at Tullett.

64. Ms. Piotrowska's status as a new Junior Broker did not provide any job protection.

65. After Defendant Higgs' alarming actions during lunch and learning of Defendant Higgs' treatment of Ms. Piotrowska, Ms. Reljic could no longer allow Defendant Higgs to continue to treat her and Defendant Company's other female employees as second class citizens.

66. Ms. Reljic also felt that she had an obligation to protect Ms. Piotrowska because she brought Ms. Piotrowska into Defendant Company.

67. In or about September, 2009, Ms. Reljic filed a complaint with Defendant Company's Human Resources Department on behalf of herself and Ms. Piotrowska.

68. After Ms. Reljic filed her complaint, Defendant Company's Human Resources Department informed her that it would contact her with the results of its investigation.

69. Thereafter, Ms. Reljic repeatedly made requests seeking information as to the status of the investigation.

70. For months, no information was forthcoming.

-10-

3365044

71.   During this time, Ms. Reljic continued to report to Defendant Higgs.

72.   Ms. Reljic was uncomfortable with Defendant Higgs because he forced her to view nude pictures while disparaging her body, fondled his genitals in front of her, and continued to berate and belittle her on a daily basis.

73.   Defendant Higgs retaliated against Ms. Reljic.

74.   Among the acts of retaliation were Defendants' forcing her to pay back a portion of her bonus to Defendant Company; telling people that she was stupid and that her work was bad; that she made too much money and that she was involved in "shady deals."

75.   Upon information and belief, Defendant Higgs was also instrumental in having Ms. Reljic investigated by the Financial Industry Regulatory Authority (known as FINRA).

76.   The work environment became increasingly hostile as a result of the retaliation that Ms. Reljic was forced to endure.

77.   In or around November, 2009, after numerous repeated requests for information regarding her internal complaint, Ms. Reljic was informed that she and Ms. Piotrowska would no longer report to Defendant Higgs.

78.   Instead, the women would report to Marcus Bolton, Chief Executive Officer (CEO) of Defendant Company.

-11-

79.  Defendants never advised Ms. Reljic whether the Human Resources' investigation was completed.

80.  Defendants never advised Ms. Reljic whether her allegations were substantiated.

81.  Defendants never advised Ms. Reljic whether Defendant Higgs had been advised that his behavior was inappropriate.

82.  Defendants never advised Ms. Reljic whether Defendant Higgs was advised that such behavior would not be tolerated or whether he was provided training and/or disciplined as a result of his behavior.

83.  Ms. Piotrowska was not advised of the results of the investigation.

84.  Defendant Higgs' behavior was accepted and/or condoned by Defendant Company.

85.  Defendant Higgs conduct would continue despite Ms. Reljic's – and other – complaints.

86.  Ms. Reljic was simply transferred from one bad actor to another.

87.  In early 2010, Mr. Bolton was removed from his position and placed on leave.

88.  Upon information and belief, Mr. Bolton was placed on leave in early 2010 as a result of an incident that occurred on or about January 6, 2010.

-12-

89.   Upon information and belief the incident in question was between Mr. Bolton and a Ms. Jessica Franqui, another female employee.

90.   Ms. Franqui filed a lawsuit naming Defendant Company and Mr. Bolton as defendants and alleging inappropriate behavior by Mr. Bolton and that Defendant Company had created a hostile work environment.

91.   In her Complaint, Ms. Franqui alleged that in the presence of male employees, while she was the only female on the trading room floor, Mr. Bolton grabbed her; bent her over backward, holding her close to his face and body; dropped her; stepped on her right breast; and pumped his fists in the air in a victorious manner.

92.   According to the Complaint, when Ms. Franqui confronted Mr. Bolton, his response was "oh come on now, it's alright, they [her breasts] are big and you probably didn't even feel it [his foot]."

93.   Ms. Franqui further alleged that Mr. Bolton was intoxicated during this incident and that he was frequently intoxicated.

94.   Ms. Reljic observed and confirmed Mr. Bolton's intoxication on the afternoon in question.

-13-

95.   Ms. Reljic was questioned regarding Mr. Bolton's behavior as alleged in Ms. Franqui's Complaint.

96.   Sexual harassment was deemed acceptable at the highest levels of Defendant Company.

97.   Defendant Duckworth was transferred from the United Kingdom to New York.

98.   Defendant Duckworth became Ms. Reljic's supervisor.

99.   Ms. Reljic scheduled a meeting with Defendant Duckworth to discuss her future with Defendant Company, as was common practice in the industry.

100.   Ms. Reljic was hopeful that the new leadership would bring a positive change to Defendant Company's working environment.

101.   When Ms. Reljic arrived at the scheduled meeting between herself and Defendant Duckworth, she found that both Defendant Duckworth and Defendant Company's General Counsel, Stephen Goulet, were present.

102.   Ms. Reljic was surprised and intimidated to find an attorney present at this meeting.

103.   Ms. Reljic was not advised that legal counsel would be present.

104.   Ms. Reljic was not permitted to have legal counsel of her own at the meeting.

3365044

105.  General Counsel was at the meeting to intimidate Ms. Reljic.

106.  When Ms. Reljic raised concerns about her employment to Defendant Duckworth, he made it clear that her complaints were not welcome and that she would suffer consequences, including reduced compensation, if she continued to complain.

107.  Defendant Duckworth said to Ms. Reljic, "we are not here to discuss who you are *not* going to report to."

108.  Defendant Duckworth refused to address Ms. Reljic's concerns about Defendant Higgs' behavior and his propensity to drop his pants.

109.  Ms. Reljic realized that neither she nor any female employees of Defendant Company would be protected from harassment and retaliation, and that she would continue to face retaliation if she continued to complain about the harassment.

110.  Ms. Reljic was required to leave Defendant Company.

111.  This was not an easy decision for Ms. Reljic to make.  She left behind a job that paid her over two million dollars ($2,000,000.00) per year.

112.  Defendants refused to provide a working environment free from harassment/retaliation.

113.  Ms. Reljic did not leave willingly, but rather as a result of Defendants' improper behavior.

-15-

3365044

## DEFENDANT'S FAILURE TO PROPERLY TRAIN ITS EMPLOYEES

114.   During her tenure, Ms. Reljic did not receive any training regarding harassment or discrimination prevention.

115.   The senior managers at Defendant Company, never received training on sexual or other harassment.

116.   The lack of training received by Defendant Company employees demonstrates that Defendant Company did not care about its legal obligation to maintain a working environment free of harassment.

117.   On March 29, 2010, Ms. Reljic filed a timely Charge of Discrimination against Defendant Company with the EEOC.

118.   A true and exact copy of Ms. Reljic's EEOC Charge is attached hereto as Exhibit B.

119.   Defendants responded to the EEOC Charge.

120.   Defendants did not object to the jurisdiction of the EEOC as to Plaintiff's claims of harassment/discrimination.

121.   On or about July 19, 2010, Defendant Company filed a complaint with the Financial Industry Regulatory Authority (FINRA) against Ms. Reljic and her current employer, Tradition Asiel Securities, Inc., in retaliation for her filing with the EEOC.

122.   On or about December 8, 2010, the EEOC issued a Notice of Right to Sue.

3365044

123.   A true and exact copy of the EEOC's Notice of Right to Sue is attached hereto as Exhibit C.

### DEFENDANTS' CONTINUED RETALIATION

124.   Ms.  Julianne  Smith,  another  female  employee  of Defendant  Company,  recently  filed  a  claim  of  harassment, discrimination and retaliation in Federal Court and alleged the same response from the Company (i.e., ignoring and concealing complaints and threatening employees who complain or support complaints).

125.   Ms. Smith alleged that she was a victim of sexual harassment and that the "boys club atmosphere created a hostile work environment."

126.   In her Complaint, Ms. Smith references the fact that she was the only female "on the [Corporate Bond] Desk of approximately 24 male brokers."

127.   Ms.  Smith  further  alleges  that  despite  multiple complaints,  Defendant  Company  took  no  action  to  stop  the inappropriate harassing behavior to which she was victim.

128.   On July 22, 2010, the EEOC found that Defendant Company discriminated against Ms. Smith.

129.   Ms.  Smith  filed  a  Complaint  in  the  United  States District Court, Southern District of New York on December 17, 2010.

-17-

3365044

130. Defendant Company increased its campaign of retaliation and intimidation by threatening Ms. Reljic with further legal action if she continued to "defame" Defendant Higgs.

131. The FINRA filing followed Ms. Reljic's EEOC complaint.

132. Defendant Company's threat of additional legal action followed the institution of another sexual harassment and discrimination claim in which Ms. Reljic's testimony would be adverse to Defendant Company.

**FIRST COUNT**

**INJUNCTIVE RELIEF**

133. Plaintiff repeats and realleges each and every allegation of paragraphs 1 through 132 of this Complaint as if set forth at length herein.

134. Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, Plaintiff asks the Court to declare that Defendants have waived any requirement to arbitrate pursuant to paragraph 12 of the Employment Agreement and that the arbitration provision in the Employment Agreement is unenforceable as written.

135. Paragraph 12 of the Employment Agreement dated September 30, 2004, provides:

-18-

3365044

12.1 Any dispute, controversy or claim between Prebon and you based on, arising out of or relating to this Agreement, the breach or termination of this Agreement, your employment with Prebon or the termination of your employment, including, without limitation, any and all claims under the Age Discrimination in Employment Act, Title VII of the Civil Rights Act, the Americans with Disabilities Act, the Family and Medical Leave Act, the Fair Labor Standards Act, the Employee Retirement Income and Security Act, The New Jersey Family Medical Leave Act, the New Jersey Law Against Discrimination, the New Jersey Wage and Hour law and any other federal, state or local law, statute or ordinance, shall be settled by final and binding arbitration in New York, New York, administered by the American Arbitration Association ("AAA") pursuant to the National Rules for the Resolution of Employment Disputes of the AAA ("rules of the AAA"). Judgment upon any resulting arbitration award may be entered in any court of competent jurisdiction. To the extent you have signed a Form U-4 that provides for the arbitration of disputes between Prebon and you pursuant to the rules of a stock exchange or other securities industry organization such as the NASD, you hereby elect to have all such disputes administered by the NASD and settled pursuant to the Rules of the NASD.

12.2 Notwithstanding Paragraph 12.1 above, Prebon shall not be required to arbitrate any dispute arising between it and you relating to Paragraph 6 or 7 above, but shall have the right to elect to institute judicial proceedings, in the jurisdiction and venue provided in Paragraph 11 above, with respect to such dispute or claim.

-19-

136.  This provision must be declared to be unenforceable because it fails to allow Plaintiff to pursue a claim with the EEOC in the event she believes that she (or others) were discriminated against.

137.  Such a failure is violative of public policy and contrary to case law.

138.  While recognizing this Court to be a proper forum for claims such as those asserted herein, Defendants retained sole discretion to bring claims in this forum/jurisdiction.

139.  On March 29, 2010, Plaintiff filed a complaint with the EEOC.

140.  Defendants submitted to the jurisdiction of the EEOC by responding to Plaintiff's EEOC Complaint.

141.  The EEOC issued Plaintiff a Right to Sue Notice which was received on December 9, 2010.

142.  The Right to Sue Notice provided Plaintiff with ninety (90) days from receipt to file suit.

143.  Plaintiff has filed suit within that time constraint.

144.  This Court is the proper venue for Plaintiff's claims.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, as follows:

-20-

3365044

a. Enjoining Defendants from compelling arbitration of Plaintiff's claims and allowing Plaintiff to proceed with same in this Court; and

b. Such other legal or equitable relief as the Court may deem just and proper.

### SECOND COUNT

### UNLAWFUL DISCRIMINATION ON THE BASIS OF GENDER IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. §§2000e *et seq.*

145. Plaintiff repeats and realleges each and every allegation of paragraphs 1 through 144 of this Complaint as if set forth at length herein.

146. As a female, Plaintiff is a member of a Protected Class.

147. At all relevant times herein, Defendant Company was an employer within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e et seq. ("Title VII").

148. Defendants intentionally discriminated against Plaintiff by, among other things, maintaining a harassing and intimidating work environment that was hostile to Plaintiff.

149. Defendants intentionally discriminated against Plaintiff by permitting and condoning Defendant Higgs' actions of exposing himself to employees, ridiculing Plaintiff's body,

-21-

3365044

and forcing her to view inappropriate pictures of his girlfriend naked.

150. Defendants intentionally discriminated against Plaintiff by failing to properly investigate her complaints of sexual harassment.

151. Such conduct by Defendants constitutes unlawful discrimination, harassment and retaliation in violation of Title VII.

152. As a direct and proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer humiliation, embarrassment, economic loss, and other such damages.

153. The conduct of Defendants was outrageous and intended to injure Plaintiff, and was done with reckless indifference to her protected civil rights, entitling Plaintiff to an award of punitive damages.

154. Such conduct by Defendants constitutes a malicious, willful, and reckless violation of Plaintiff's rights under Title VII.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, as follows:

        a.   Compensatory and consequential damages;

        b.   Punitive damages;

-22-

c.   Prejudgment interest;

d.   An order requiring Defendants to properly provide accurate, positive references for Plaintiff and to refrain from providing false and inaccurate information which may negatively impact upon her reputation or future professional opportunities;

e.   Reasonable attorneys' fees and costs; and

f.   Such other legal or equitable relief as the Court may deem just and proper.

### THIRD COUNT

### UNLAWFUL RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. §§2000e *et seq.*

155.  Plaintiff repeats and realleges each and every allegation of paragraphs 1 through 154 of this Complaint as if set forth at length herein.

156.  Plaintiff was engaged in protected activities, including making complaints about the Defendants' discriminatory policies and practices and participating in/supporting complaints by others.

157.  Defendants took adverse employment action against Plaintiff with the purpose of retaliating against her because of her participation in the protected activities.

-23-

158. Such conduct by Defendants constitutes unlawful discrimination, harassment and retaliation in violation of Title VII.

159. As a direct and proximate result of Defendants' retaliatory actions, Plaintiff has suffered and continues to suffer humiliation, embarrassment, economic loss, and other such damages.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, as follows:

        a. Compensatory and consequential damages;

        b. Punitive damages;

        c. Prejudgment interest;

        d. An order requiring Defendants to properly provide accurate, positive references for Plaintiff and to refrain from providing false and inaccurate information which may negatively impact on Plaintiff's reputation or future professional opportunities;

        e. Reasonable attorneys' fees and costs; and

        f. Such other legal or equitable relief as the Court may deem just and proper.

3365044

### FOURTH COUNT

### SEXUALLY HOSTILE WORK ENVIRONMENT IN VIOLATION OF THE NEW JERSEY LAW AGAINST DISCRIMINATION, N.J.S.A. 10:5-1, *et seq.*

160. Plaintiff repeats and realleges each and every allegation of paragraphs 1 to 159 of this Complaint as if set forth at length herein.

161. Defendant Company is an employer under the New Jersey Law Against Discrimination, N.J.S.A. 10:5-5(e) (hereinafter the "LAD").

162. By virtue of the severe and pervasive conduct set forth in this Complaint, Defendants created a sexually hostile work environment in violation of the LAD.

163. Defendants failed to adequately investigate and remediate Plaintiff's complaints of sexually inappropriate conduct in the work place, and to rectify same after repeated notice of such conduct by Plaintiff and others.

164. The aforesaid conduct of Defendants, particularly in view of their failure to properly investigate Plaintiff's complaints or protect her against retaliation for complaints, constitutes actual participation in egregious behavior and/or willful indifference, by upper management, to such egregious conduct in violation of Plaintiff's rights, that is sufficient to subject defendants to punitive damages under the LAD and Lehmann v. Toys 'R' Us, Inc., 132 N.J. 587, 625 (1993).

-25-

3365044

165.   Plaintiff has been severely injured as a result of such sexual harassment, in that she has suffered, and continues to suffer humiliation, embarrassment, economic loss, and other such damages.

**WHEREFORE**,   Plaintiff   demands   judgment   against Defendants, jointly and severally, as follows:

a.   Compensatory and consequential damages;

b.   Punitive damages;

c.   Prejudgment interest;

d.   An order requiring Defendants to properly provide accurate, positive references for Plaintiff and to refrain from providing false and inaccurate information which may negatively impact on Plaintiff's reputation or future professional opportunities;

e.   Reasonable attorneys' fees and costs, with appropriate enhancement pursuant to Rendine v. Pantzer, 141 N.J. 292 (1995); and

f.   Such other legal or equitable relief as the Court may deem just and proper.

-26-

3365044

## FIFTH COUNT

### GENDER DISCRIMINATION IN VIOLATION OF THE NEW JERSEY LAW AGAINST DISCRIMINATION, N.J.S.A. 10:5-1, *et seq.*

166. Plaintiff repeats and realleges each and every allegation of paragraphs 1 through 165 of this Complaint as if set forth at length herein.

167. Defendants illegally discriminated against Plaintiff based on her gender in violation of the LAD.

168. The foregoing conduct by Defendants was willful and egregious conduct on the part of, and with the active encouragement and participation of, upper management of Defendant Company, such egregious conduct is in violation of Plaintiff's rights, that is sufficient to subject Defendants to punitive damages under the LAD and Lehmann v. Toys 'R' Us, Inc., 132 N.J. 587, 625 (1993).

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, as follows:

    a. Compensatory and consequential damages;

    b. Punitive damages;

    c. Prejudgment interest;

    d. An order requiring Defendants to properly provide accurate, positive references for Plaintiff and to refrain from providing false and inaccurate information which

3365044

may negatively impact on Plaintiff's reputation or future professional opportunities;

e. Reasonable attorneys' fees and costs, with appropriate enhancement pursuant to Rendine v. Pantzer, 141 N.J. 292 (1995); and

f. Such other legal or equitable relief as the Court may deem just and proper.

## SIXTH COUNT

### UNLAWFUL RETALIATION IN VIOLATION OF THE NEW JERSEY LAW AGAINST DISCRIMINATION, N.J.S.A. 10:5-1, *et seq.*

169. Plaintiff repeats and realleges each and every allegation of paragraphs 1 through 168 of this Complaint as if set forth at length herein.

170. By and through the foregoing conduct, Defendants retaliated against Plaintiff for complaining about Defendant Higgs' inappropriate behavior, by creating a hostile work environment, forcing her to pay back a portion of her bonus to the Company, spreading rumors and falsehoods about her, filing a FINRA complaint against her, constructively discharging her, and involving her new employer in this issue.

171. The aforesaid conduct of the Defendants, particularly in that they retaliated against Plaintiff by constructively discharging her for complaints about sexual harassment, constitutes actual participation in egregious

-28-

behavior and/or willful indifference by upper management to such egregious conduct, in violation of Plaintiff's rights, sufficient to subject defendants to punitive damages under the LAD and Lehmann v. Toys 'R' Us, Inc., 132 N.J. 587, 625 (1993).

172.   Plaintiff has been severely injured as a result of such retaliation, in that she has suffered, and continues to suffer humiliation, embarrassment, economic loss, and other such damages.

**WHEREFORE,**   Plaintiff   demands   judgment   against Defendants, jointly and severally, as follows:

        a.   Compensatory and consequential damages;

        b.   Punitive damages;

        c.   Prejudgment interest;

        d.   An order requiring Defendants to properly provide accurate, positive references for Plaintiff and to refrain from providing false and inaccurate information which may negatively   impact   on   Plaintiff's   reputation   or   future professional opportunities;

        e.   Reasonable attorneys' fees and costs, with appropriate enhancement pursuant to Rendine v. Pantzer, 141 N.J. 292 (1995); and

        f.   Such other legal or equitable relief as the Court may deem just and proper.

3365044

## SEVENTH COUNT

### Constructive Discharge

173.  Plaintiff repeats and realleges each and every allegation of paragraphs 1 through 172 of this Complaint as if set forth at length herein.

174.  As set forth above in detail, Defendant Higgs engaged in sexually hostile conduct toward Plaintiff, and Defendants tolerated the hostile environment Defendant Higgs created by refusing to investigate and effectively remediate Defendant Higgs's behavior. Instead, Defendants' retaliated against Plaintiff. Whereas she was thus compelled to resign as no reasonable woman would have been able to tolerate such an environment.

175.  Such resignation constitutes a constructive discharge.

176.  Plaintiff has been financially and emotionally harmed by virtue of such constructive discharge, in violation of the LAD, N.J.S.A. 10:5-1, et seq.

**WHEREFORE,** Plaintiff demands judgment against Defendants, jointly and severally, as follows:

        a.  Compensatory and consequential damages;

        b.  Punitive damages;

        c.  Prejudgment interest;

3365044

d.   An   order   requiring   Defendants   to   properly provide   accurate,   positive   references   for   Plaintiff   and   to refrain from providing false and inaccurate information which may negatively   impact   on   Plaintiff's   reputation   or   future professional opportunities;

e.   Reasonable   attorneys'   fees   and   costs,   with appropriate enhancement pursuant to Rendine v. Pantzer, 141 N.J. 292 (1995); and

f.   Such   other   legal   or   equitable   relief   as   the Court may deem just and proper.

### EIGHTH COUNT

### AIDING AND ABETTING LIABILITY

177.  Plaintiff  repeats  and  realleges  each  and  every allegation of paragraphs 1 through 176 of this Complaint as if set forth at length herein.

178.  By  and  through  the  foregoing  conduct,  Defendant Higgs aided, abetted, incited, compelled and coerced the acts forbidden under the LAD including creating a sexually hostile work   environment,   illegal   harassment,   discrimination   and retaliation, in violation of N.J.S.A. 10:5-12(e).

179.  Defendant Higgs is therefore individually liable to Plaintiff for the violation of the LAD.

-31-

3365044

180.  By and through the foregoing conduct, Defendant Duckworth aided, abetted, incited, compelled and coerced the acts forbidden under LAD including creating a sexually hostile work environment, illegal harassment, discrimination and retaliation, in violation of N.J.S.A. 10:5-12(e).

181.  Defendant Duckworth is therefore individually liable to Plaintiff for the violation of the LAD.

182.  Defendant Company is liable for such conduct under principles of respondeat superior.

**WHEREFORE,** Plaintiff demands judgment against defendants, jointly and severally, as follows:

a.  Compensatory and consequential damages;

b.  Punitive damages;

c.  Prejudgment interest;

d.  An order requiring Defendants to properly provide accurate, positive references for Plaintiff and to refrain from providing false and inaccurate information which may negatively impact on Plaintiff's reputation or future professional opportunities;

e.  Reasonable attorneys' fees and costs, with appropriate enhancement pursuant to Rendine v. Pantzer, 141 N.J. 292 (1995); and

-32-

       f.   Such other legal or equitable relief as the Court may deem just and proper.

WILENTZ, GOLDMAN & SPITZER, P.A.

By: _____
    DOMINICK BRATTI (DB6123)
    For the Firm

Dated:   March 8, 2011

-33-

3365044

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues so triable.

WILENTZ, GOLDMAN & SPITZER, P.A.

By: _____
     DOMINICK BRATTI  (DB6123)
     For the Firm

Dated:   March 8, 2011

3365044

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

I certify that, to the best of my knowledge, information and belief, the matter in controversy herein is not the subject of any other proceeding pending in any court or of any pending arbitration proceeding, except that following the filing of Plaintiff's EEOC Charge, Defendant Tullett Prebon Financial Services, LLC. filed a Statement of Claim against Plaintiff Suncica Reljic for arbitration administered by the Financial Industry Regulatory Authority alleging breach of contract and related claims (Arbitration No. 10-03265).

WILENTZ, GOLDMAN & SPITZER, P.A.

By: _____
DOMINICK BRATTI   (DB6123)
For the Firm

Dated:   March 8, 2011

-35-

3365044