<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| SUNCICA RELJIC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | **Civil Action No. 11-01323 (SRC)** |
| v. | : | |
| | : | **OPINION** |
| TULLETT PREBON AMERICAS CORP., | : | |
| et. al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

**CHESLER**, District Judge

This matter comes before the Court on the motion to compel arbitration and dismiss Plaintiff's Complaint by Defendants Tullett Prebon Americas Corp., Tullett Prebon (Americas) Holding Inc., Tullett Prebon Financial Services, LLC ("Tullett"), Tullett Prebon plc, Richard Higgs ("Higgs"), and Stephen Duckworth ("Duckworth") (collectively, "Defendants") [docket entry 6]. Plaintiff Suncica Reljic ("Plaintiff") has opposed the motion. This Court has opted to rule based on the papers submitted and without oral argument, pursuant to Federal Rule of Civil Procedure 78. For the reasons expressed below, the Court will grant Defendants' motion to compel arbitration and dismiss the Complaint.

**I.  BACKGROUND**

Tullett is an inter-dealer broker company that serves an as intermediary in wholesale financial markets and facilitates the trading activities of its clients, consisting mostly of

commercial and investment banks.  Plaintiff started working for Tullett on January 7, 2002 as a broker trainee and completed Tullett's training program by May 2002.  Subsequently, on September 30, 2004, Plaintiff and Tullett entered into an employment agreement (the "Employment Agreement"), which was amended on October 18, 2005, and again on January 14, 2008.  Among other things, the Employment Agreement contains a dispute resolution clause ("Arbitration Clause") in which Plaintiff and Tullett agreed to arbitrate any and all disputes arising out of Plaintiff's employment with Tullett, including any claims based on Title VII of the Civil Rights Act or the New Jersey Law Against Discrimination ("NJLAD").  The Arbitration Clause states, in relevant part:

> Any dispute, controversy or claim between [Tullett] and you based on, arising out of or relating to this Agreement, the breach or termination of this Agreement, your employment with [Tullett] or the termination of your employment, including, without limitation, any and all claims under . . .  Title VII of the Civil Rights Act . . . the New Jersey Law Against Discrimination . . . and any other federal, state, or local law, statute or ordinance, shall be settled by final and binding arbitration in New York, New York, administered by the American Arbitration Association ("AAA") pursuant to the National Rules for the Resolution of Employment Disputes of the AAA ("Rules of the AAA"). . . . To the extent you have signed a Form U-4 that provides for the arbitration of disputes between [Tullett] and you pursuant to the rules of a stock exchange or other securities industry organization such as the NASD, you hereby elect to have all such disputes administered by the NASD and settled pursuant to the Rules of the NASD.[1]

(Smith Decl., Ex. B, ¶ 12.1.)  In October 2004 and December 2007, Plaintiff signed and submitted to the Financial Industry Regulatory Authority (hereafter, "FINRA") her Uniform Application for Securities Industry Registration or Transfer ("Form U-4").  Plaintiffs Form U-4s were approved and she became a registered broker with FINRA.

---

[1] The NASD was succeeded by FINRA on July 16, 2007, pursuant to a merger approved by the U.S. Securities and Exchange Commission.  *See* SEC Release No. 34-56145, *available at* http://www.sec.gov/rules/sro/nasd/2007/34-56145.pdf.

On March 8, 2011, Plaintiff filed this action against Defendants, asserting claims of unlawful sex discrimination, sexual harassment, and retaliation in violation of Title VII, 42 U.S.C. § 2000(e), *et seq.*, and the NJLAD, N.J.S.A. 10:5-1, *et seq.* According to Plaintiff's Compliant, she was frequently subjected to harassment, discrimination, retaliation, and a "boy's club" atmosphere which created a hostile work environment.

## II.   DISCUSSION

Defendants ask this Court to compel arbitration in this case because Plaintiff's Employment Agreement mandates the arbitration of all of the claims asserted in her Complaint. In opposition, Plaintiff argues that the Arbitration Clause is unenforceable because: 1) it restricts Plaintiff's right to pursue a claim with the Equal Employment Opportunity Commission ("EEOC") and because it fails to explicitly apprise Plaintiff of her right to file a charge with the EEOC; 2) Plaintiff did not knowingly and voluntarily waive her rights to a jury trial; 3) it is an unconscionable contract of adhesion; and 4) the claims against individual Defendants Higgs and Duckworth are nonarbitrable since they are not signatories to the Employment Agreement.

### A.   Arbitration Clause and the EEOC Process

Plaintiff avers that the Arbitration Clause is unenforceable because it interferes with her right to file a charge with the EEOC and pursue litigation she began upon the filing of her EEOC charge.[2] The Federal Arbitration Act ("FAA") establishes "a strong federal policy in favor of the

---

[2] Plaintiff additionally contends that Defendant Tullett was required to include notice of Plaintiff's "right to file a charge with the EEOC and any limitation that may exist on instituting litigation after the EEOC administrative proceedings" in the Arbitration Clause. (Pl.'s Opp'n Br. at 11.) In support of her contention, Plaintiff relies on policies located on the EEOC website. However, not only are the EEOC publications not binding on this Court, they solely deem

3

resolution of disputes through arbitration," which is not diminished when a party to an arbitration agreement raises claims under a federal statute. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Indeed, in recent years the United States Supreme Court and Third Circuit have held enforceable arbitration agreements relating to claims arising under Title VII. *Seus v. John Nuveen & Co.*, 146 F.3d 175, 182 (3d Cir. 1998); *see also Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 34 (1991) (holding that arbitration is not inferior to the judicial process for resolving statutory claims and that "so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function"). "By agreeing to arbitrate a statutory claim, a party does not forego the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial forum . . ." *Gilmer*, 500 U.S. at 26; *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 628 (1985) (ruling that arbitration clauses trade "the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration").

As such, Plaintiff's argument that the Arbitration Clause is unenforceable because it interferes with certain rights relating to the EEOC is without merit because arbitration does not undermine the role of the EEOC in enforcing Title VII claims. A claimant subject to an arbitration agreement will still be free to file a charge with the EEOC, even though the claimant is not able to institute a private judicial action. *See Gilmer*, 500 U.S. at 28. Indeed, Plaintiff

---

employee promises not to file EEOC charges as violative of public policy and do not state that an arbitration provision must inform an employee of her right to file a charge with the EEOC. *See Enforcement Guidance on non-waivable employee rights under Equal Employment Opportunity Commission (EEOC) enforced statutes*, available at http://www.eeoc.gov/policy/docs/waiver.html.

filed a charge with the EEOC in this case. The mere involvement of an administrative agency in the enforcement of a statute is not sufficient to preclude arbitration. *Id.* Therefore, Plaintiff's contention that the Arbitration Clause unlawfully infringes on her rights to bring a claim before the EEOC is unfounded.

      **B.**      **Knowing and Voluntary Waiver of Rights to a Jury Trial**

Plaintiff maintains that she did not knowingly and voluntarily waive her right to a court hearing in favor of arbitration of her current claims. An agreement to arbitrate statutory employment claims is only binding on the employee when he or she has knowingly waived the right to a court hearing and has clearly agreed to the terms of the agreement. *Sabark v. Citigroup Global Markets, Inc.*, 354 F. Supp. 2d 531, 541 (D.N.J. 2004). As such, there must be an unambiguous writing that clearly establishes that an employee intended to waive the right to sue. *Id.* As the New Jersey Supreme Court has observed, "a clause depriving a citizen of access to the courts should clearly state its purpose" in order to "assure that the parties know that in electing arbitration as the exclusive remedy, they are waiving their time-honored right to sue." *Garfinkel v. Morristown Obstetrics & Gynecology Assocs.*, 773 A.2d 665, 670 (2001). In making that determination, that court asked the following questions: (1) whether the relevant waiver-of-rights provision reflects an unambiguous intention to arbitrate a claim; and (2) if so, whether the record before the court indicates that plaintiff clearly had agreed to that provision.[3] *Katchen v. Smith*

---

    [3] In Plaintiff's opposition brief, she relies on *Swarts v. Sherwin-Williams Co.*, 244 N.J. Super. 170, 177 (App. Div. 1990), which lays out a six factor test to be applied in determining whether a waiver is knowing and voluntary. However, in *Swarts*, the court analyzed whether a former employee knowingly and voluntarily waived his right to bring a claim for age discrimination under the NJLAD when he signed a covenant not to sue; wholly different from the issue of waiver pursuant to an arbitration clause which is at issue in this case.

*Barney, Inc.*, No. 04-3762, 2005 U.S. Dist. LEXIS 16408, at *14 (D.N.J. Aug. 3, 2005); *Leodori v. Cigna Corp.*, 814 A.2d 1098, 1104 (2003).

In addressing the first question, it should initially be noted that Plaintiff's opposition brief fails to raise an issue of confusion or ambiguity as to the contractual language. Moreover, the Arbitration Clause unequivocally sets forth the drafter's intention to arbitrate all employment-related claims, including those that might be asserted under NJLAD and Title VII, since the relevant provision lists the federal statutes by name as falling within its purview, as well as other statutory, contractual and common law rights. (Smith Decl., Ex. B, ¶ 12.1.) Moreover, there is no dispute among the parties that the scope of the agreement encompasses the claims at issue in the instant matter. While Plaintiff contends that Tullett was required to provide language indicating that the employee had other legal options that employee was giving up by agreeing to the waiver, this argument is unsupported by the law. This Court is unable to find any case law requiring that an employer include specific language indicating that arbitration would be "in lieu of" the employee's right to sue. This Court is satisfied that Plaintiff was provided with adequate notice at the time she signed the Employment Agreement that all claims relating to employment with and termination from Tullett would be resolved through arbitration.

In addition, the record before the Court indicates that Plaintiff clearly agreed to the waiver-of-rights provisions. A valid waiver "results only from an explicit, affirmative agreement that unmistakably reflects the employee's assent." *Leodori*, 814 A.2d at 1105. The Court will not assume that employees intend to waive those rights unless their agreements provide as such in unambiguous terms. *Garfinkel*, 773 A.2d at 672. Here, the Arbitration Clause specifically refers to Title VII and NJLAD by name as arbitrable matters. This language easily satisfies the

6

requirement that such clauses provide an unmistakable conveyance of an employee's willingness to waive his or her statutory remedies. And, Plaintiff's signing of the Employment Agreement containing the Arbitration Clause constitutes a concrete manifestation of her assent. *See Sarbak*, 354 F. Supp. 2d at 541. In view of all the foregoing, this Court concludes that there was a knowing and voluntary waiver by Plaintiff of her statutory rights, as she agreed clearly and unambiguously to arbitrate the disputed claims.

> **C.     Unconscionability of the Arbitration Clause**

Plaintiff contends that the Arbitration Clause is an unconscionable contract of adhesion for a variety of reasons. Plaintiff bears the burden of proof on her claim of unconscionability. *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 181 (3d Cir. 1999). The Third Circuit, in *Harris*, set out the standard for assessing unconscionability claims:

> In evaluating claims of unconscionability, courts generally recognize two categories, procedural, or "unfair surprise," unconscionability and substantive unconscionability. Procedural unconscionability pertains to the process by which an agreement is reached and the form of an agreement, including the use therein of fine print and convoluted or unclear language. . . . Substantive unconscionability refers to contractual terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent.

*Id.* at 181-82.

Plaintiff claims the Arbitration Clause is procedurally unconscionable because it was presented on a take-it-or-leave-it basis with no room for negotiation, because she executed it on the day it was presented to her, and because her bargaining position was severely limited. In evaluating whether a contract of adhesion is procedurally unconscionable, a court must look "not only to the take-it-or-leave-it nature or the standardized form of the document but also to (1) the subject matter of the contract, (2) the parties' relative bargaining positions, (3) the degree of

economic compulsion motivating the 'adhering party,' and (4) the public interests affected by the contract." *Pyo v. Wicked Fashions, Inc.*, No. 09-2422, 2010 U.S. Dist. LEXIS 32746, at *13 (D.N.J. Mar. 31, 2010). Consideration of those factors requires the conclusion that the Arbitration Clause at issue in this case is not procedurally unconscionable. Although the Clause is a contract of adhesion, Plaintiff's bargaining position was not so disadvantaged as to rob her of any meaningful choice but to accede. In light of her educational and professional background -- Plaintiff graduated from college with a degree in International Studies and worked for a financial services firm and consulting firm prior to her employment with Tullett -- Plaintiff should have had no problem reading and understanding the terms of the document. Although Plaintiff claims the Employment Agreement was presented to her on a take-it-or-leave-it basis in a hurried manner, she has presented no evidence that she attempted to read the document and was precluded from doing so or that she could not have negotiated the terms of the contract or found another job. Therefore, the Court rejects Plaintiff's argument that the Arbitration Clause was procedurally unconscionable.

     Plaintiff additionally contends that the Clause is substantively unconscionable because it requires her but not Defendant Tullett to arbitrate claims and because it does not allow her to seek equitable remedies before the FINRA. Plaintiff's averment that the Arbitration Clause does not similarly obligate Tullett to arbitrate disputes is wrong; the Clause clearly states that the requirement to arbitrate applies to both Tullett and employees. (Smith Decl., Ex. B, ¶ 12.1.) The only disputes that Tullett is not required to arbitrate are those specifically set forth in paragraphs 6 and 7 of the Employment Agreement concerning Plaintiff's prohibition against unfairly competing with and soliciting clients and stealing trade secrets and intellectual property from

Tullett. (Smith Decl., Ex. B, ¶ 12.2.) Such distinctions and lack of complete mutuality are permissible since it is well-established that a contract may confer rights and obligations on one party that it does not confer on the other. *Harris*, 183 F.3d at 180; *Becker Autoradio U.S.A., Inc. v. Becker Autoradiowerk GmbH*, 585 F.2d 39, 47 (3d Cir. 1978). And, Plaintiff's assertion that the Arbitration Clause bars her from seeking equitable remedies at FINRA is incorrect because, under the FINRA Code of Arbitration Industry Disputes Rule 13802(e), "[t]he panel may award any relief that would be available in court under the law," which would include equitable relief. Thus, the terms of the Arbitration Clause are not substantively unconscionable.

        **D.**      **Applicability of the Employment Agreement to Higgs and Duckworth**

Finally, Plaintiff contends that because Defendants Higgs and Duckworth are not signatories to the Employment Agreement, the claims against them are not subject to arbitration. As such, according to Plaintiff, this Court should not compel arbitration of her claims against Tullett because they are significantly intertwined with her claims against the individual Defendants, the separation of which would result in the bifurcation of claims, unacceptable duplication or work, and the risk of differing results. (Pl.'s Opp'n Br. at 19.)

Courts, including the Third Circuit, have applied agency principles to require that claims against officers or employees of one of the contracting parties who were not signatories to the arbitration contract be submitted to arbitration. *See Pritzker v. Merrill Lynch, Pierce, Fenner & Smith*, 7 F.2d 1110, 1121-22 (3d Cir. 1993); *Farmland Dairies, Inc. v. Mile Drivers & Dairy Employees Union Local 680*, 956 F. Supp. 1190, 1196-97 (D.N.J. 1997); *Bleumer v. Parkway Ins. Co.*, 277 649 A.2d 913, 930 (N.J. Super. Ct. Law Div. 1994). Because a principal is bound under the terms of a valid arbitration clause, its agents, employees, and representatives are also

9

covered under the terms of such agreements. *See Arnold v. Arnold Corp.*, 920 F.2d 1269, 1281-82 (6th Cir. 1990) (holding that plaintiff's federal securities law and RICO claims against non-signatory officers of the defendant and an independent broker dealer were arbitrable); *Letizia v. Prudential Bache Secs.*, 802 F.2d 1185, 1187-88 (9th Cir. 1986) (ruling that a broker's employees were entitled to invoke clause in the employer's brokerage agreement requiring arbitration of fraud and federal securities law violations). The *Arnold* opinion, which was approvingly cited by the Third Circuit in *Pritzker,* observed that if the rule were otherwise, a party could easily "avoid the practical consequences of an agreement to arbitrate by naming non-signatory parties as [defendants] in his complaint or signatory parties in their individual capacities only [and] the effect of the rule requiring arbitration would, in effect, be nullified." *Arnold*, 920 F.2d at 1281. Here, there can be no doubt that Higgs and Duckworth, respectively the senior managing director and global chief operating officer of Tullett, are agents and employees of the Defendant company. Therefore, Plaintiff's claims against the individual Defendants are subject to arbitration.

As such, the Arbitration Clause in the Employment Agreement is enforceable and, because all of Plaintiff's claims against Defendants arise under the Clause, this Court will grant Defendants' motion to compel arbitration and dismiss the Complaint.[4]

---

[4] If a party to a binding arbitration agreement is sued in a federal court on a claim that the plaintiff has agreed to arbitrate, it is entitled under the Federal Arbitration Act to a stay of the court proceeding pending arbitration and to an order compelling arbitration. 9 U.S.C.S. §§ 3, 4. If all the claims involved in an action are arbitrable, as they are in the current matter, a court may dismiss the action instead of staying it. *Seus v. John Nuveen & Co.*, 146 F.3d 175, 179 (3d Cir. 1998); *Carfagno v. ACE, Ltd.*, No. 04-6184, 2005 U.S. Dist. LEXIS 12614, at *23-24 (D.N.J. June 28, 2005).

**III. CONCLUSION**

For the foregoing reasons, this Court grants Defendants' motion to compel arbitration and dismiss the Complaint. An appropriate form of order will be filed together with this Opinion.

    s/ Stanley R. Chesler
STANLEY R. CHESLER
United States District Judge

DATED: June 21, 2011